**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

AMD GLOBAL TELEMEDICINE, INC.,     )
                                           )
           Plaintiff,                  )
                                           )      Case No.
v.                                           )
                                           )      JURY TRIAL DEMANDED
TELEHEALTH SOLUTION PLLC,         )
                                           )
           Defendant.            )
                                           )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff AMD Global Telemedicine, Inc. ("AMD" or "Plaintiff"), by and through its attorneys, brings this action for breach of contract against TeleHealth Solution PLLC ("TeleHealth" or "THS" or "Defendant"), and alleges as follows.

## NATURE OF THE ACTION

1.      Since its founding in 2006, AMD's mission is designing and delivering virtual technology solutions that enable healthcare organizations to increase their reach to patients regardless of their patients' locations.

2.      Beginning in 2018, AMD and THS operated under a contractual relationship whereby, among other things, AMD provided telemedicine products, services, and support to certain of THS's customers in exchange for payment from THS.

3.      In late April 2023, THS abruptly ended the parties' relationship without giving the requisite sixty-day written notice of an alleged breach of any material obligation of AMD under the parties' written agreement and opportunity to cure.

4.      At that time, THS owed AMD approximately $300,000 from outstanding invoices plus accruing interest and collection costs (including reasonable attorney's fees), as well as approximately $100,000 for May and June 2023 invoices. THS also owed AMD approximately

$15,000 on certain customer statements of work that had not yet reached the end of their initial one-year terms.

5.      As part of its efforts to abruptly cut ties with AMD without reason, THS attempted to return certain AMD Hardware via moving trucks and FedEx packages. The Hardware was primarily thrown in boxes and unpackaged. Much of the Hardware that was returned arrived damaged. THS also failed to provide any information about where such Hardware came from, such as the respective name of the THS customer or respective statement of work between AMD and THS.

6.      Most of the AMD Hardware and AMD Software, however, was not, and has never been, returned to AMD. THS has failed to pay AMD for "the then-current fair market value" of the AMD Hardware and AMD Software as contractually required.

7.      Through this lawsuit, AMD seeks damages, interest, collection costs, and reasonable attorneys' fees owed to it in connection with the parties' written agreement and THS's breaches of contract.

## PARTIES

8.      Plaintiff AMD Global Telemedicine, Inc., is a Delaware corporation with a principal place of business at 100 Apollo Drive, Chelmsford, Massachusetts, 01824.

9.      Defendant TeleHealth Solution PLLC, is a North Carolina professional limited liability company with a principal place of business at 112-A Argus Lane, #210, Mooresville, North Carolina, 28110. Upon information and belief, TeleHealth Solution PLLC only has one member Waseem Ghannam, MD, who is a citizen of North Carolina.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in

2

controversy exceeds \$75,000. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over THS because THS consented to such jurisdiction in the parties' written agreement, which provides that "[a]ny disputes, actions, claims or causes of action arising out of or in connection with [the Amended Master Services Agreement] or the Service shall be subject to the exclusive jurisdiction of the state and federal courts located in Massachusetts." This Court also has personal jurisdiction over THS because, *inter alia*, THS transacts or has transacted business within the Commonwealth of Massachusetts, and/or THS otherwise avails itself of the privileges and protections of the laws of the Commonwealth of Massachusetts.

12.     Venue is proper in this judicial district because THS agreed that "[a]ny disputes, actions, claims or causes of action arising out of or in connection with [the Amended Master Services Agreement] or the Service shall be subject to the exclusive jurisdiction of the state and federal courts located in Massachusetts." Venue is also proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to AMD's claims occurred in this district or a substantial part of property that is the subject of the action is situated in this district, and because this Court has personal jurisdiction over THS.

## **FACTS COMMON TO ALL CLAIMS**

13.     For over eighteen years, AMD has been in the business of manufacturing, marketing, and selling telemedicine products and providing related services.

14.     THS provides telehealth services to its customers, including post-acute facilities and acute care facilities.

*Parties' Agreement*

15.     AMD and THS entered into the Master Services Agreement made as of June 25, 2018. Eric Bacon, as then-President, signed the Agreement on behalf of AMD. Waseem Ghannam, as then-CEO, signed the Agreement on behalf of THS. AMD and THS subsequently entered into the First Amended Master Services Agreement as of March 4, 2020 (the "Amended Master Services Agreement.")

16.     The Amended Master Services Agreement sets forth the terms and conditions pursuant to which THS agrees to pay fees to AMD in exchange for AMD's provision of (a) "AMD Hardware" and "AMD Software" specified in each Statement of Work ("SOW") to THS for THS to integrate and use in connection with telehealth services to be provided by THS to the respective customer specified in the SOW, and (b) "AMD Support" to THS and its customers.

17.     The Amended Master Services Agreement defines "Products" to include "AMD Hardware" and "AMD Software." "AMD Hardware" includes hardware, including medical devices, to be provided by AMD to THS. "AMD Software" refers to "proprietary software applications to be provided by AMD to THS for a Customer and specified on a SOW. AMD Software may contain third-party components licensed to AMD."

18.     The Amended Master Services Agreement defines "Services" as "the AMD Support to be provided by AMD to THS and its Customers pursuant to this Agreement." "AMD Support" refers to the support services to be provided by AMD to THS, specifically "standard support for the AMD Software" such as free upgrades to newer software versions, updates, and enhancements as well as live technical support during designated hours on designated days and an answering service for support requests.

4

19.     Section 6 of the Amended Master Services Agreement provides that "THS shall pay all undisputed fees as detailed in each SOW for the Products and Services to be provided by AMD to THS for the Customer specified on such SOW." After the first month of Products and Services provided by AMD, "[a]ll fees . . . shall be billed on the first of each month and payable by THS in 30 days. Interest shall accrue at the rate of 1.5% per month with respect to any monthly fees not received by AMD within fifteen (15) days after the due date."

20.     Section 6 of the Amended Master Services Agreement continues "[i]n the event AMD incurs any costs (including reasonable attorney's fees) from efforts collecting overdue undisputed fees from Telehealth, Telehealth agrees to pay such costs."

21.     Section 3 of the Amended Master Services Agreement provides that each SOW for each THS customer "shall have an initial term of one year" and after that initial one-year term each SOW "shall automatically continue for successive one (1) year renewal terms . . . until such time as either Party provides written notice to the other Party in accordance with Section 10 of this Agreement of its intent to terminate such SOW."

22.     In accordance with Section 10 of the Amended Master Services Agreement, both AMD and THS may terminate the Amended Master Services Agreement "in the event of a breach of any material obligation" of the other party only after providing the requisite sixty days' written notice and the alleged breach is not cured within the sixty-day notice period.

23.     Pursuant to Section 10(b) of the Amended Master Services Agreement, "THS may terminate this Agreement upon sixty (60) days' written notice to AMD in the event of a breach of any material obligation of AMD under this Agreement, provided that the alleged breach is not cured during the sixty (60) day notice period."

24.     Pursuant to Section 10(c) of the Amended Master Services Agreement, "THS may terminate any SOW following completion of the Initial SOW Term or any Renewal Term thereafter, by providing AMD with at least sixty (60) days' prior written notice."

25.     Following termination of the Amended Master Services Agreement as provided for in Section 10(b), Section 10(f) states "THS may, at its sole discretion, either (i) return all AMD Hardware, AMD Software and Materials that are the subject of such Agreement or SOW to AMD, or (ii) retain the AMD Hardware, AMD Software and Materials in exchange for paying AMD the then-current fair market value of the AMD Hardware and/or AMD Software."

26.     "Materials" means the written materials relating to the operation and use of the AMD Hardware and AMD Software including but not limited to user manuals, user guides, technical manuals, release notes, and online help files.

27.     Under Sections 10(d) and (e) of the Amended Master Services Agreement, THS also may terminate the Agreement or any SOW "if AMD makes an assignment for the benefit of its creditors, or has a petition in bankruptcy filed for or against it and it is not dismissed within 60 days" or "upon the dissolution of AMD."

28.     At no time has AMD made an assignment for the benefit of its creditors, filed a bankruptcy petition, or been dissolved.

29.     Section 24 of the Master Services Agreement states "[a]ny action related to this Agreement will be governed by the laws of the Commonwealth of Massachusetts and controlling U.S. federal law. No choice of law rules of any jurisdiction will apply."

***THS's Notice of Termination of Amended Master Services Agreement and Statements of Work in Late April 2023 and AMD's Responses Thereto***

30.     On or about April 25, 2023, THS, through its attorneys, sent a purported "Notice of Termination of Master Services Agreement, as amended" ("THS's Notice.") That same Notice

also purported to terminate "all Statements of Work executed under" the Amended Master Services Agreement.

31.     In THS's Notice, THS purported to terminate the Amended Master Services Agreement and SOWs "for cause."

32.     In a conclusory and boilerplate fashion, THS's Notice stated that "[b]y failing to provide the Products and Services required under the Agreement and Statements of Work, for, among other reasons, the simple fact that AMD's deliverables did not work and put patients at risk, AMD is in breach of the Agreement. Accordingly, the Agreement will terminate within 15 days of AMD's receipt of this letter."

33.     THS's Notice offered no detail about any alleged breach of a material obligation of AMD under the Amended Master Services Agreement.

34.     In THS's Notice, THS acknowledged its outstanding financial obligations to AMD and its willingness to satisfy outstanding invoices. Specifically, THS stated, "THS is willing to discuss payment of a reasonable amount for the value of the Products and Services provided by AMD to THS in order to satisfy the outstanding invoices and terminate the Agreement amicably."

35.     On or about May 22, 2023, AMD, through its counsel, responded to THS's Notice and explained that no cause exists for THS's termination of the Amended Master Services Agreement and SOWs.

36.     In that same response, AMD demanded payment from THS of approximately $300,000 for outstanding invoices plus accruing interest, collection costs, and reasonable attorney's fees, approximately $15,000 for SOWs that had not yet reached their respective initial one-year terms, and approximately $100,000 for May and June 2023 invoices. AMD also

demanded payment for damaged, retained, and missing AMD Hardware, AMD Software, and Materials.

37.     AMD continued to demand payment from THS during the following months.

***Damaged, Retained, and Missing AMD Hardware, AMD Software, and Materials***

38.     Shortly after sending THS's Notice, THS attempted to return certain damaged AMD Hardware on or about April 27, 2023, July 19, 2023, and August 10, 2023, to AMD via moving trucks and FedEx packages. THS provided no documentation accompanying these returns explaining what was being returned and other identifying information such as the respective SOW or customer name.

39.     Upon receipt from THS, AMD undertook great effort to itemize what was attempted to be returned by THS. The AMD Hardware in many cases was damaged.

40.     Though THS attempted to return certain damaged AMD Hardware to AMD, the majority of AMD Hardware, AMD Software, and Materials was not returned to AMD. Such AMD Hardware, AMD Software, and Materials are being retained by THS and/or are missing.

41.     To date, THS has failed to compensate AMD for the damaged AMD Hardware returned.

42.     For all of the AMD Hardware, AMD Software, and Materials THS has chosen to retain and/or are missing, THS has failed to pay AMD "the then-current fair market value" as contractually required and THS owes AMD hundreds of thousands of dollars.

**COUNT I**
**(Breach of Contract)**
**(AS AGAINST DEFENDANT)**

43.     AMD repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

44.     The Amended Master Services Agreement is a valid, binding, and enforceable contract.

45.     Under Section 6 of the Amended Master Services Agreement, THS is obligated to pay fees invoiced to THS as reflected in the SOWS issued for each THS customer.

46.     At the time of THS's Notice, THS had failed to pay AMD the following amounts not inclusive of accruing interest, collection costs, or reasonable attorneys' fees: (a) $28,805.00 for December 2022, (b) $70,530.00 for January 2023, (c) $68,715.00 for February 2023, (d) $66,425.00 for March 2023, and (e) $63,315.00 for April 2023.

47.     Since that time, THS has refused to pay these outstanding amounts along with accruing interest, collection costs, and reasonable attorneys' fees as required under the Amended Master Services Agreement.

48.     THS breached Section 6 of the Amended Master Services Agreement by failing to pay AMD amounts, interest, collection costs, and reasonable attorneys' fees owed to it under the Amended Master Services Agreement.

49.     As a result of THS's breaches, AMD has suffered and continues to suffer damages, including accruing interest, collection costs, and reasonable attorneys' fees, the precise amount of which will be determined at trial.

## COUNT II
### (Breach of Contract)
### (AS AGAINST DEFENDANT)

50.     AMD repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

51.     The Amended Master Services Agreement is a valid, binding, and enforceable contract.

52.     Under Section 10(b) of the Amended Master Services Agreement, THS only could "terminate this Agreement upon sixty (60) days' written notice to AMD in the event of a breach of any material obligation of AMD under this Agreement, provided that the alleged breach is not cured during the sixty (60) day notice period."

53.     THS never gave AMD sixty days' notice of any alleged breach of "any material obligation of AMD under this Agreement." Nor did THS give AMD sixty days to cure any alleged breach.

54.     At no time has THS explained how AMD allegedly breached "any material obligation of AMD under" the Amended Master Services Agreement.

55.     THS breached Section 10(b) of the Amended Master Services Agreement by failing to give AMD sixty days' notice of any alleged breach of any material obligation of AMD, an opportunity to cure, and the requisite written notice of breach of a material obligation of AMD.

56.     As a result of THS's breaches, AMD has suffered and continues to suffer damages, including interest, collection costs, and reasonable attorneys' fees, the precise amount of which will be determined at trial. At minimum, AMD's damages include but are not limited to AMD's invoiced fees to THS of $54,630.00 for May 2023 and $56,280.00 for June 2023, as well

as $14,955.00 in connection with SOWs that had not yet reached their respective initial one-year terms, plus accruing interest, collection costs, and reasonable attorneys' fees.

**COUNT III**
**(Breach of Contract)**
**(AS AGAINST DEFENDANT)**

57.    AMD repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

58.    The Amended Master Services Agreement is a valid, binding, and enforceable contract.

59.    In a circumstance of termination of the Amended Master Services Agreement or any SOW, Section 10(f) of the Amended Master Services Agreement provides that "THS may, at its sole discretion, either (i) return all AMD Hardware, AMD Software and Materials that are the subject of such Agreement or SOW to AMD, or (ii) retain the AMD Hardware, AMD Software and Materials in exchange for paying AMD the then-current fair market value of the AMD Hardware and/or AMD Software."

60.    On or about April 25, 2023, THS purported to terminate the Amended Master Services Agreement and SOWs but only provided fifteen-days' notice.

61.    THS did not return but chose to retain the majority of AMD Hardware, AMD Software, and Materials. However, THS has failed to pay AMD the then-current fair market values of such AMD Hardware, AMD Software, and Materials.

62.    As to the remainder, THS attempted to return certain AMD Hardware but the Hardware arrived damaged.

63.    THS breached Section 10(f) of the Amended Master Services Agreement by failing to pay AMD the then-current fair market values of retained or missing AMD Hardware,

11

AMD Software, and Materials, failing to provide AMD with AMD Hardware, AMD Software, and Materials without damage, and failing to pay for returned but damaged AMD Hardware.

64.     As a result of THS's breaches, AMD has suffered and continues to suffer hundreds of thousands of dollars in damages, plus accruing interest, collection costs, and reasonable attorneys' fees, the precise amount of which will be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, AMD prays for judgment in its favor and against THS providing the following relief:

A.     Enter judgment in favor of AMD and against THS on all counts;

B.     Award AMD its damages suffered as a result of THS's acts and any other damages, interest, collection costs, and reasonable attorneys' fees that AMD is entitled to, including under the Amended Master Services Agreement and/or by any applicable law;

C.     Award AMD pre-judgment and post-judgment interest in the maximum amount allowed by law;

E.     Award AMD costs incurred in bringing this action; and

F.     Award AMD other relief as this Court deems just and proper.

## JURY DEMAND

AMD demands a trial by jury on all issues triable of right by a jury which are raised for determination.

Respectfully submitted,


*/s/ Sara Lonks Wong*
Sara Lonks Wong (BBO# 693907)
slonkswong@nutter.com
Nutter, McClennen & Fish, LLP
Seaport West, 155 Seaport Blvd.
Boston, Massachusetts 02210
Telephone:   (617) 439-2000
Facsimile:    (617) 310-9139

Attorneys for Plaintiff AMD Global
Telemedicine, Inc.

Dated:  June 28, 2024

6682673